Good morning. The first case is 095073, Cook v. United States. Mr. Mangus. May it please the court. My name is Joseph Mangus. I'm from the Como Law Firm in Santa Fe, New Mexico. And this morning we're here on an appeal involving some federal mining claims. Those mining claims are located in the Jemez Mountains of northern New Mexico. The Jemez Mountains is an old volcano. It's at one point was 17 or 18,000 feet high, blew its top, and as a result of that, a caldera was formed. Counsel, if you don't mind, I'm going to jump you right to the issue. Okay. Your settlement agreement that your client said, said it was subject to all pertinent statutes and regulations. So what has the government done in this case that is inconsistent with that? Sure, Your Honor. There's at least two things that the government has done that would be inconsistent with that provision of the settlement agreement. First of all, the government unilaterally suspended processing the plans of operations for the mining claims or the mining operation that is on this. Suppose that your client was not just removing pumice, but it was discovered that he was removing all kinds of other stuff inappropriately. Would the government under those circumstances have been justified in suspending his operations? Your Honor, I think that that's a good question. Given what was going on here, I don't think so. I think that the contract, the settlement agreement, allows... Wait, you think that the government... You think that, you said no, the government would not have been? I just want to make sure. Yes. The government could not have suspended his operations. Suspended all operations, that's correct. There are ways that the government can enforce its rules and regulations as they apply to mining claims and mining operations. Suspension of a mining claim, unilateral suspension of mining claims, would not be one of those. Suspension of all operations. We're talking about an ongoing mine that had a tremendous capital investment involved. The company has sorters, it has shakers, it has trucks. It really was a big capital investment that was invested on these claims. There's been really no allegation here of the nature that you're raising. But I would say that if you go to the settlement agreement, it does have an enforcement process in it. Wait, so your view is the government, apart from the settlement agreement, suppose there was no settlement agreement, suppose that somebody is mining, the government never has the authority in any set of circumstances to suspend all mining when they find someone's doing something wrong in conjunction with that mining. They have the authority to bring an NOV. To bring a what? An NOV, it's a notice of violation. It puts the party on notice of the problem. The party has due process rights because you're talking about property interest here. It has due process rights, a right to a hearing. The government could suspend the operations. Well, actually, I'm not positive that it could suspend. This is a question that is being litigated in the Tenth Circuit Court of Appeals as we speak because there was an NOV issued against this company relating to some different issues that are being litigated here. But the suspension of all mining operations would be a very draconian sort of thing. And I think that I'm not prepared here to analyze or answer the question as to whether suspension is a proper remedy under those circumstances. But what I would say is that if we look at the settlement agreement and you look at the settlement agreement in its totalitarian, the paragraph 4 specifically provides that plaintiffs and defendants submit themselves to the continuing jurisdiction of the court of claims subject to applicable law for the sole purpose of any proceedings to enforce this agreement. And the settlement agreement itself had a provision which prohibited the removal of common variety of pumice. And so the court of claims was empowered by the parties here to adjudicate disputes over the settlement agreement. And that's what's going on here because if we look at paragraph 3... What's the relationship between this case in the court of claims and the cases now pending in the Tenth Circuit? The case in the Tenth Circuit involves an NOV. And the notice of violation was issued to the company alleging that co-powered pumice had to show to the government's satisfaction that the pumice produced from this mining operation was actually used in the laundry industry. That's what that's about. And so there is an example... That underlies that factual determination as the basis on which the government shut you down? No. The basis on which the government shut this operation down was its assertion that the kind of pumice that was in these mines was no longer an uncommon variety of pumice. And this is a total about-base from the position the government had taken previously. And it really, if you look at what went on here, there were several mining claim contest proceedings... What I'm trying to get at is in your response to questions from Judge Moore, you were suggesting that the government, in exercising its right under the settlement agreement to impose the proper statutes and regulations, that they made a mistake. I would agree with that, yes. I mean, was that litigated in the Court of Federal Claims? The legitimacy of shutting you down. Of what? The legitimacy on the facts of why they shut your operation down. No, that was not. That's why that's pertinent. You lost. Why did you lose, Bill? We lost because what the Court of Claims determined was that the government had the power to bring a contest, suspend the operations, notwithstanding the settlement agreement, which provided that COPAR, my client, was entitled to retain these mining claims. Right, but the way I understood it was that Judge Bucking was saying, well, you had the right to retain the mining claims provided that in your retention of the mining claims you complied with applicable law and regulations. I would agree with that. That's the way he looked at it. So he said, okay, the government claims that it was enforcing law and regulations properly when they shut you down. And I had understood, maybe I'm wrong, I had understood that the litigation over whether that was right or wrong was going on in the District Court and in the Tenth Circuit. No, that actually is not, because the Tenth Circuit case involved a notice of violation and the notice of violation did not shut the mine down. It was continuing to operate. That was just an NOV. There was no penalty. Right, but if you win in the Tenth Circuit, won't you be boxed out by the decision here? I don't. You've been shut down, right? Well, what's happened is the mining claim contest proceeding has been filed. It has not been resolved. So the validity of the claims is still an open question. What our position is... Aren't you viewing the case as though you were, under the settlement agreement, you were allowed to continue to operate the claims that were exempt in the settlement agreement without regard to any statute or law? The government doesn't have the right to shut you down. I wouldn't say without regard to any statute or law. Pretty close to. No, not at all, because our clients have complied with the federal surface management regulations. Every regulation that applies to these operations has been honored with the exception of my client arguing that we've already had a mineral contest. These claims have already been determined to be valid. We've made a huge investment that you know about. Right, but isn't there a law or a regulation that says your right to win this mineral depends on the nature of the mineral, whether it's used for this, that, and the other thing? I think that the argument there is very simple, and that's whether it's a common variety mineral or an uncommon. Right, but that's a matter of regulation. It is, but what it is is that determination has already been made judicially, and it resulted in this settlement agreement by which my clients gave up a number of claims, and the government said you can retain these claims. And that decision was not made and you're bound to follow it forever? Pardon me? Does this turn on what the mineral is being used for? It turns on whether the deposit is common variety. In other words, whether it has block pumice that's pumice over 2 inches in one dimension, and whether that is an uncommon variety. But from our point of view, that decision's already been made. It is a deposit of uncommon variety of pumice, and the government agreed that my clients would have the right to retain four of those claims in exchange for giving up 17 claims and in exchange for resolving ongoing contest proceedings. Well, let me make sure I just understand the circumstances. The government wanted to eliminate all the mining in this area because why? It was hurting the surface. It was upsetting the park. What was the policy reason behind the initial decision to prevent mining in the area or severely limit it? It's the Jemez National Recreation Area Act, I think, provided the impetus for what you're asking, and that required the government to bring contest proceedings, which happened, and four of those claims, the ones we're talking about here, were determined to be valid. Okay, but the government wanted to prevent mining, but they said ultimately there's been a determination, I understand, that they said that, well, we'll prevent mining of common minerals, but we'll let the uncommon minerals continue to be mined, and in your case you have, what, four claims to the uncommon pumice, correct? Right, yes. And the reason that they're letting, what makes pumice uncommon is the size so that it can be used in the, is it the manufacture or the washing of stonewash? It's, right, correct. An all-important public purpose, I get it. So in any event, you have the need, the great need for this uncommon pumice, and the government decided that it was worthwhile to allow that to continue to be mined, is that right? I think the government was required to, in terms of the mineral examination, the mining company showed that there was a large market for this material, and not just common, not for laundry, but also for air pollution control equipment. But that's not the market your client is filling. It is, too. But I understand the whole purpose of this suit is that your client took the uncommon pumice, beat it down to make it into common pumice, and then used it to fill its common pumice wells. That's actually not the case. The beating down might not be exactly technically accurate. That goes to the merits, really. We came up on a motion to dismiss. If all of the facts that our clients allege are true, then that would not be the case. And what our client would show would be that 95% of this pumice was used in the laundry industry or in the air pollution control equipment industry, which are legitimate, well-recognized uses for uncommon variety of pumice. I feel like I'm eating up all your rebuttal time. Do you want to save some? I'll go ahead and save a couple of minutes, and we'll see what I can answer at that point. Thank you. Mr. Salazar? Good morning. Your Honors, may I please the Court? This Court should affirm the trial court's dismissal  upon which relief may be granted. Appellant's complaint alleged a violation of a single sentence in the settlement agreement. That sentence is the one that we were discussing before, and it provides that plaintiffs will retain Brown-Plasser mining claims numbers 9 through 12 as unpatented mining claims subject to all pertinent statutes and regulations. And there are two key components of that sentence, the term unpatented mining claims and the phrase subject to all pertinent statutes and regulations. And the Cook's appeal hinges on their misinterpretation of both of those two key terms. In fact, the Cooks repeatedly concede that the government may challenge the validity of an unpatented mining claim at any time. For example, on page 17 of the appellant's opening brief, they concede that, quote, obviously the government has the authority to bring a contest proceeding and to declare an unpatented claim null and void. And that concession is, frankly, the end of appellant's case. Is that what the government did in this case? Did you declare their unpatented claim null and void? No. All the government did in this case is file a contest complaint before the Department of Interior to challenge the current validity of the unpatented mining claims. And that is the allegation that plaintiffs made in their... or appellants made in their complaint below. Just the bare filing of the... The filing of the challenge is the act of the breach of the contract? Correct, Your Honor. That is one of their allegations of breach. But again, they... Well, do they have any other allegations of breach? They do. The other allegation plaintiffs make in their complaint is that the government's suspension of the review of their mining plans of operations also was a breach of the contract, of the settlement agreement. The problem... The filing of the suspension of review, part and parcel of the challenge? Correct. The government, the Forest Service in this case, suspended its review of their mining plans on the grounds that there's no point in approving... Review? What does review of the mining clearance mean? Before the mining companies can go forth and actually mine the claims, they have to have in place a mining plan of operation. And it's... Help me with the facts. As to these four claims, there's never been any mining? There has been, and that's... So they must have had a plan in place pursuant to which they were mining. Correct, and that's, I think, the mistake that appellants make before the court is this notion that we suspend... that we, the government, suspended their operations is incorrect. It's incorrect. That's not the allegation they make in their complaint. And indeed, in their reply brief at pages 3 and 9, appellants concede that the mining plans in question expired by their... The mining plans that were in existence expired by their own terms. So the reason why they can't mine anymore is because the mining plans that were in place since 1997... Well, that's what I was trying to get at, is to have you take me through the acts, the acts of the breach. You said, for example, the filing of the challenge was claimed as a breach, and your argument is, well, that gets dismissed as a matter of law because the government has the right to impose its laws and regulations. Whether they're right or wrong is going to be determined in the challenge, right? Correct. So what's the second act of breach? Was the government suspending, you say, a review of something? The review of new mining plans of operations because, as plaintiffs' appellants concede, the ones that were in place since 1997 expired on roughly around... Oh, on November 19, 2007, and that's at the joint appendix of... And your argument would be, I suppose, that the government has the right to suspend review of a new mining plan where they are of the view that the whole thing ought to be shut down anyhow. Correct. And so that's like the first act of breach. It's one where the merits would be resolved in an APA action or something like that. Correct. If they... If plaintiffs' remedy for not having... for an allegation that we should have reviewed their mining plans lies through an administrative process before an interior and then the APA. But in this case, the other thing that's worth noting, and we point this out in our briefs, is that the Forest Service, as part of that administrative appeal, has already reversed itself and began reviewing the mining plans. So the suspension of mining plans that plaintiff alleges breached the settlement agreement only occurred for three or four months. And during that time period, the reason why plaintiffs couldn't... That's why I asked about the connection between the APA cause of action and appellate review in a regional circuit about that, because it seemed to me like this particular plaintiff who's in front... appellant who's in front of us might well prevail. If they prevail on the APA cause of action, you know, where they're trying to say, hey, the government made a mistake. They shouldn't have either shut me down or they should have continued to review, and they win. Then if they win on that, then the problem is they want to come back and say, well, we're entitled to damages for the time period between when we were, you know, held down and now we're getting ready to go. And the problem is they're res judicata because this is the damage case. But, Your Honor, our argument, if we were ever to get down to that scenario, is that that whole process that Your Honor's talking about, that separate administrative review and APA process, has nothing to do with the settlement agreement at all. In other words, that the settlement agreement makes no promises about... No, but the settlement agreement says, in the way you look at it, there were a whole mess of mining claims and the government wants to shut. They say, okay, in the price that the government will pay for you agreeing to shut down 13 of them, you get to mine four of them, provided that the way you mine the four of them is a matter of, you know, under law, right? Correct. And so the plaintiff has chosen to bring this damage, this contract, breach of contract, cause of action now before they know the answer to whether or not the government behaved properly in shutting them down. Because the merits of that is going off on APA cause of action and going to regional circuits, right? Correct. But our view is that even if we end up being wrong about the administrative actions, that would not be a breach of the settlement agreement. How can you say that? Then you would have taken an action that was to prevent them from continuing to mine, according to the settlement agreement, that would not have been because of law or regulation. So why would that not... That baffles me. Why would that not be a breach of the settlement agreement? Because in this settlement agreement, we don't warrant that we won't take certain administrative actions. What?  when somebody says, I agree to behave pursuant to law, you are subjecting yourself to the risk of challenge by the government that you're not behaving according to law. Right, and if you prevail over there, then you get to keep your mining claims and move forward, again, pursuant to law. But it may be a taking, it may be whatever it is when we normally interfere with plaintiffs' mining claims, but it doesn't transform into a breach of contract also. Because all this clause does is reflect our agreement that plaintiffs can retain whatever mining claims existed prior to the passage of that Hennas National Recreation Act. But suppose, okay, suppose that the government, not pursuant to any regulation, just walks in and shuts them down. Nope, police are here, shut down, pack up your stuff, get out. Is that a breach of the settlement agreement? We do not believe so, Your Honor. Then how... I don't understand, then, what they got. What they... In the settlement agreement, according to the government. What the plaintiffs received was $3.9 million, and we filed... No, what they got in this clause that allowed them to retain the four claims. It was just a reservation of rights that whatever we had prior to the passage of the act in question, we get to keep. But you just said that if the government walked in with no justification, not pursuant to reg or law, and shut them down, that that would not cause a breach. Wouldn't it interfere with their right to continue doing what they had before? Yes, but our view is that it doesn't, that this clause doesn't transform what otherwise would be actionable anyhow. That's the point. So your point is that it doesn't mean anything. The argument, I think, that the appellant's making is that the contract protects them from arbitrary and capricious acts by the government. And transforms it into a breach. And that's why, frankly... No, they're saying, I think, because he's keying his point on the fact that the government has flipped on whether this pumice is, I mean, this stuff is in the ground and either does have a certain number of nodules in it or doesn't. I mean, that hasn't changed. It would take eons of time to do that. And he's saying they flipped on you, which was arbitrary act. He's saying that type of act is outside the scope of the ordinary compliance with law and regulation. What changed, Your Honor, is the marketability of the pumice. So, of course, the nodes, I don't know much about the science of mining, but I assume that Your Honor is correct that the actual pumice deposits haven't changed. But what's changed is the end-use and the marketability. And that's what triggered the filing of the contest complaint. But... And the regulations permit the government to stand right there by the place where they bring this stuff up and process it. And he's blowing the whistle. We understand the marketplace is being used for the wrong purpose now. Well, no, I think what factually triggered the new review is the fact, as plaintiffs concede, their then-existing mining plans of operation expired. So at the point in time in which they want new mining plans approved, the government first views its obligations having to confirm whether or not the minerals are still locatable. And in this case, they determined after doing a new mineral study and looking at the marketability... And locatability turns on end-use, right? Correct. And so, in this case, the government filed a contest complaint. And because of the contest complaint said there's no point in reviewing the mining plans, our view is that you have no locatable minerals. And so what I take issue with that the appellate before said is that we've unilaterally suspended their operations. That's inaccurate, and that's conceded, again, at their reply brief at 3 and 9, is that their mining plans of operation expired by their own accord. And then they were no longer allowed to mine once their mining plans had expired. The only thing that we did, if you can consider it in an action, is the refusal to review the new mining plans. Again, as the court noted, because of the ongoing challenge to the of the mining claim. And that's why the review was suspended. But even then, it was only suspended, as the record indicates, at 148 to 50. It only was suspended for a few months. And when plaintiff appellants did follow the administrative review process, decided, well, I guess there's no reason why we can't go ahead and review the mining plans subject to the validity contest. And they did that in part as the I think it's the deputy regional forester decided, was because appellants volunteered to undertake the cost of some of that themselves. Right. You mean you're, I think, trying to suggest to us that maybe it's all going to work out okay for these guys. In the end, they'll be able to mine. But that's irrelevant to the contract issue. That's correct. I mean, I don't want to know whether the fact that they're running the mine right now and enjoying all the benefits. The fact is, the reason why their complaint was dismissed below was because they didn't allege any at a minimum, because they didn't allege any government action that was contrary to any pertinent statute of regulation. And that's why Judge Breeding said at the minimum, even assuming I was wrong. Basically, each of the acts of the breach of the settlement agreement that they alleged are simply events that the government was fully entitled to take pursuant to the settlement agreement. So it can't be a breach. Exactly correct. And that is, and the conclusive proof of that is that plaintiffs have, even before this court, yet to point to a single regulation or a single case and say, the government did X and Reg Y says you can't do that, or Statute Z says you can't do that, or Case XYZ says you can't do that. Well, wait, that's not entirely true because they point to public law 167, which defines the difference between common and uncommon pumice in terms of the two inches. And then they point to the fact that they have a claim that allows them to remove the uncommon pumice and there doesn't seem to be any dispute or argument by the government that what they're removing is anything other than uncommon pumice. And so the government's decision to thwart their ability to do that based entirely on end use, not on what they're removing, is a violation of the settlement agreement. I mean, I think that's what they're pointing to. No, Your Honor. Their complaint says that merely the filing of the settlement agreement. Just the fact that we've challenged it. And it's true, we've challenged it based on end use and marketability issues, but it has, it's really just focused on the very fact that we've issued the challenge. And there they don't dispute that under Cameron and under the applicable Forest Service regulations and BLM regulations that we are permitted to file a contest complaint. Right, okay. But suppose I were to construe their challenge as not just a broad statement that you are not permitted to challenge us, but rather you're not permitted to stop us and challenge us when you're wrong. When it's not based on a reg or a statute as the settlement agreement requires. And I think at a minimum, that question of whether we're wrong is to be adjudicated through the BLM interior APA process. And it's not that, even that, the court doesn't have jurisdiction to decide. Can I ask one more question? Are you saying that the determination of whether the mineral is common or uncommon depending on its final end use is a matter of regulatory law? I mean, is that, Judge Moore points to the statute apparently that says there's a difference between common and uncommon. Is the government's authority to change that depending on end use a matter of regulation? It's a matter of regulation case law, and even the statute itself. Yes. Thank you. Thank you. Thank you, your honors. On this whole, let me just address the last point. Actually, the Court of Claims determined that this is a valuable mineral deposit. It had uncommon variety pumice in it, and COPAR received $3 million, $3.9 million, for the uncommon variety pumice that was located elsewhere. So the idea that only an administrative body has the ability to determine whether a given deposit is uncommon or common is not true. In fact, if we look at the cases below that we filed this motion in, that's what they arose out of. That's why there was a takings. That's exactly why there was a takings. It was the Court of Claims' decision that those deposits were mineable, and the government took those deposits, and there was a settlement reach that flew out of that. I thought the $3.9 million was for the common pumice. It was. You said uncommon. It was for the common variety that were not allowed to mine, but what's left is the uncommon variety that we should be allowed to mine, but that the government is refusing to allow to happen now. That's why we're here. The government is saying whether it's uncommon or not depends on end use, and that will change over time, and the time when they mark that, when they decide to do it, is when they review a mining plan. You come in, you have a mining plan, and they take a snapshot, and they say, what's the stuff used for? Oh, it's uncommon. Fine. Go ahead and take it. If you come in on the renewal, am I wrong? That's what they're saying. That's what they're saying, and we disagree with that, and that is one of the issues that's before the Tenth Circuit Court of Appeals is exactly that. That's what I'm trying to get at, but it's not in front of us. Part of my trouble with the case is I'm looking at the merits of whether or not what the government did acting on regulations pursuant to which it had authority, because you say, well, they have the authority. They want to review what we're doing. You know, if they want to... As far as the end use argument, it's our client's position, and that issue is being asked of pumice that determines whether it's uncommon or common. The end use is irrelevant to that except insofar as the company in this case... You can lose this breach of contract suit over the settlement agreement, and still, if things work out right in the APA cause of action, be allowed to mine these four claims. That's correct. There's one caveat that I have to point out, and that is that, yes, we needed mining plans, plans of operations that needed to be approved. But the government, as it acknowledges, refused to continue processing those because it thought the claims were invalid. So there's going to be a period of time... I'm just trying to get at what the case is about. The case is about your downtime between now and when you're back up again. That and... The effect of this breach is that your client, if you lose in the APA cause of action, you're out of business, right? In terms of the validity of these claims? No, I mean, you're not going to be able to mine them. I mean, what's up for grabs is whether this is common or uncommon. That's going to be in the review process and all that. So ultimately, if the government prevails on its view of the situation, you're going to be out of business on these claims. Except for our claim here that the government promised that our claims... Right, but your damages here are you're sort of out of business between now and then. But the government is saying when you're out of business anyhow because you didn't have your plan ran out. Your permission to win the mineral ran out. There are applications, and this is where we get to the facts, and this is granted on a motion to dismiss. If you look at our complaint, we allege that the mining plans were not processed unlawfully, that they suspended their process. We can see what you allege. Thank you very much. Thank you very much. Case is submitted.